UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PETER JENSEN,<br><br>                      Plaintiff,<br><br>                  v.<br><br>HILTON NEWARK AIRPORT, STATEWIDE REALTY CO. a/k/a STATEWIDE REALTY CORP., HILTON HOTELS CORP., TITAN PROPERTY MANAGEMENT, LLC, LIPINSKI SNOW SERVICES, INC., JOHN DOE (#1-10), and ABC CORP. (#1-10),<br><br>                  Defendants. | Civil Action No. 09-1290 (SDW)(MCA)<br><br>**OPINION**<br><br>May 10, 2011 |

**WIGENTON**, District Judge.

Before the Court are Defendant Statewide Realty Company d/b/a Hilton Newark Airport and Hilton Hotels Corp.'s (collectively "Statewide") Motion for Summary Judgment ("Motion") and Defendant Titan Property Management's ("Titan") Cross Motion for Summary Judgment ("Cross Motion") pursuant to Fed. R. Civ. P. 56(c). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a). These motions are decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons below, this Court grants Statewide's Motion and Titan's Cross Motion.

**FACUTAL AND PROCEDURAL BACKGROUND**

This personal injury action arises from an alleged slip and fall that occurred on February 23, 2008, at the Hilton Newark Airport Hotel (the "hotel") located at 1170 Spring Street, Elizabeth, New Jersey. (Am. Compl. ¶ 9.) At the time of the alleged accident, Statewide had a

1

contract with Defendant Titan, a snow removal company.[1]  (Shim Aff. Ex. D.)  Pursuant to that contract, Titan was required to perform snow removal and de-icing services at the hotel.  The contract also required Titan to be "on call" for twenty-four hours a day.  (Shim Aff. Ex. D, Mutz Dep. 31:11-13.)  Therefore, the hotel's employees could call Titan if they observed a hazardous condition at the hotel and Titan would come and perform the necessary services.  (Id. at 29:12-18.)

Plaintiff Peter Jensen ("Plaintiff" or "Jensen") was a guest at the hotel when the alleged accident occurred.  (Shim Aff. Ex. C.)  Plaintiff asserts that he slipped and fell on a puddle with black ice in an open area in the hotel's outdoor self-parking while he was on his way to dinner.  According to Jensen, the accident occurred around 8:55 p.m.  (Am. Compl. ¶ 9; Shim Aff. Ex. B, Jensen Dep. 35:1-3, 36:10-12, 53:7-10.)  Plaintiff alleges that he first noticed the black ice when he touched the area he had fallen.  (Shim Aff. Ex. B, Jensen Dep. 59:18-21.)  After his fall, Plaintiff maintains that he walked to the guardhouse in the parking lot, which was about ten to fifteen feet from the location of the accident, and reported the incident to the parking attendant, Agnes Nyariki ("Nyariki").  (Shim Aff. Ex. B, Jensen Dep. 51:4-8, 53:15-20.)

Thereafter, Jensen refused Nyariki's offer of medical assistance, retrieved his vehicle from the parking lot, and drove to dinner without incident.  (Shim Aff. Ex. B, Jensen Dep. 65:7-23.)  Nyariki testified that she walked to the area where Plaintiff allegedly fell and she noticed that there were spots of black ice in the area.  (Shim Aff. Ex. H, Nyariki Dep. 19:24-20:4.)  Subsequently, Nyariki notified the hotel's security and engineering personnel and reported the accident.  (Id. at 21:7-10.)  Wayne Woods ("Woods"), one of the hotel's stationary engineers, reported to the scene of the incident.  (Id. at 21:14-15.)  However, Woods testified that he

---

[1] Donald Mutz, Titan's owner, testified that although he is unsure which contract was in effect at the time of the accident, there is no doubt that Titan had a contract with Statewide to provide snow removal services.  (Shim Aff. Ex. D, Mutz Dep. 8:16-18, 20:19-20, 26:8-11.)

2

inspected the area near the booth and found it to be dry and clear of snow and ice. (Shim Aff. Ex. F, Woods Dep. 53:11-20.)

Although Plaintiff alleges that there was black ice in the parking lot, on February 22, 2008, the day prior to the alleged accident, Titan plowed and "salted" the hotel's outdoor parking lot from 1:10 p.m. to 2:55 p.m. (Shim Aff. Ex. D, Mutz Dep. 33:14-19, 34:3-9.) On the day of the alleged accident, there was no precipitation; however, Titan, once again, applied salt to the outdoor parking lot from 11:54 a.m. to about 4:00 p.m. (Id. at 34:15-24, 35:1-3; Shim Aff. Ex. B, Jensen Dep. 35:9-34, 36:1-2.) Mutz testified that his employees usually put the plowed snow in designated areas near sewers so that the snow could melt into the sewers. (Shim Aff. Ex. D, Mutz Dep. 21:3-6.) Furthermore, Woods, who is responsible for ensuring that the hotel's pavements and parking lot are without ice and properly plowed, asserted that on the day of the alleged accident, he checked the parking lot between 3:00 p.m. and 8:45 p.m. and did not notice any snow or ice related problems. (Shim Aff. Ex. F, Woods Dep. 17:17-20, 33:7-22; Shim Aff. Ex. G, at 2.) According to Woods, the snow in the outdoor parking lot had been plowed, "the de-icing material was applied and the lot surface was dry and free of ice" during his routine inspection of the parking lot. (Shim Aff. Ex. G, at 2.) Similarly, the parking lot was well lit and Plaintiff maintains that he did not observe any black ice in the parking lot when he checked into the hotel around 4:30 p.m. (Shim Aff. Ex. B, Jensen Dep. 52:1-20, 57:1-3; Shim Aff. Ex. C; Shim Aff. Ex. H, Woods Dep. 46:9-10.) Additionally, Jamie Louardo ("Louardo"), the director of property operations for the hotel, maintained that prior to Plaintiff's alleged accident, none of the hotel's customers complained about ice or snow in the parking lot. (Shim Aff. Ex. E, at 2.)

On November 19, 2008, Plaintiff a complaint in the Superior Court of New Jersey, Union County, alleging negligence against Statewide. On March 20, 2009, Statewide removed the

action to the United States District Court for the District of New Jersey. Subsequently, on September 22, 2009, Plaintiff amended the Complaint and added Titan Property Management, LLC and Lipinski Snow Services, Inc., as Defendants. Thereafter, on December 1, 2010, Statewide filed its Motion and on January 3, 2011, Titan filed its Cross Motion.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." Id. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculation, unsupported assertions or denials of its pleadings. Shields v. Zuccarini, 254 F.3d 476, 481 (3d

4

Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crafting Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Servs., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." Black Car Assistance Corp. v. New Jersey, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. "Such affirmative evidence - - regardless of whether it is direct or circumstantial - - must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322

.

## DISCUSSION

1. **Statewide's Motion**

Statewide argues that its Motion should be granted because Jensen cannot demonstrate that it had actual or constructive notice of the dangerous condition in the parking lot. On the

other hand, Plaintiff maintains that summary judgment should not be granted because there are material issues of fact in dispute and Statewide had actual and constructive notice of the dangerous condition.

"A negligence cause of action requires proof that a defendant owed a duty of care, the defendant breached that duty, and injury was proximately caused by the breach." Siddons v. Cook, 382 N.J. Super. 1, 13 (App. Div. 1995). Plaintiff bears the burden of proving that Statewide breached it duty of care. Buckelew v. Grossbard, 87 N.J. 512, 525 (1981). Under New Jersey law, "a business owner owes a reasonable duty of care 'to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe.'" Jerista v. Murray, 185 N.J. 175, 191 (2005) (quoting Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003)). Therefore, Statewide "had a duty to discover any dangerous condition on its property . . . that posed a safety hazard to its customers." Jerista, 185 N.J. at 191.

However, "[a] proprietor generally is not liable for injuries caused by defects of which he[/she] had no actual or implied knowledge or notice, and no reasonable opportunity to discover." Brown v. Racquet Club of Bricktown, 95 N.J. 280, 291 (1984). Therefore, "[o]rdinarily an injured plaintiff asserting a breach of that duty must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." Nisivoccia, 175 N.J. at 563. "Whether a reasonable opportunity to discover a defect existed will depend on both the character and duration of the defect." Brown, 95 N.J. at 291.

Statewide maintains that summary judgment should be granted because Plaintiff has not shown that it had actual knowledge of the dangerous condition. (Statewide's Br. 9.) This Court

agrees. The record indicates that on the day before the accident, Titan plowed the snow in the parking lot and applied salt from 1:10 p.m. to 2:55 p.m. (Shim Aff. Ex. D, Mutz Dep. 33:14-19, 34:3-9.) Furthermore, on the day of the alleged incident, Titan applied salt to the outdoor parking lot from 11:54 a.m. to about 4:00 p.m. (Id. at 34:15-24, 35:1-3; Shim Aff. Ex. B, Jensen Dep. 35:9-34, 36:1-2.) Additionally, Woods testified that on the day of the alleged accident, he inspected the parking lot between 3:00 p.m. and 8:45 p.m. and did not observe any snow or ice. (Shim Aff. Ex. F, Woods Dep. 17:17-20, 33:7-22; Shim Aff. Ex. G, at 2.) Hence, contrary to Jensen's position, Hilton has established when and how the parking lot was inspected. Furthermore, Plaintiff deposed Woods and therefore had the opportunity to question him about the manner in which he inspected the parking lot on the day of the accident. However, Plaintiff failed to take advantage of the opportunity. In addition, Louardo stated that prior to Plaintiff's alleged accident, none of the hotel's customers complained about ice or snow in the parking lot. (Shim Aff. Ex. E, at 2.) Moreover, even Plaintiff testified that he did not see any black ice when he first arrived at the hotel and he discovered the black ice only after he touched the spot where had fallen. (Shim Aff. Ex. B, Jensen Dep. 52:1-20, 57:1-3.) Therefore, this Court finds that Hilton did not have actual knowledge of the dangerous condition.

Defendant Hilton also argues that it did not have constructive knowledge of the black ice. The Court agrees. To constitute constructive knowledge, the black ice in the outdoor parking lot must have existed "for a sufficient length of time." Tua v. Modern Homes, Inc., 64 N.J. Super. 211, 218 (1960) (quoting Torda v. Grand Union Co., 59 N.J. Super. 41, 44 (App. Div. 1959)) (internal quotations omitted); see also David v. Pueblo Supermarket, 740 F.2d 230, 234 (3d Cir. 1984) (noting that plaintiff must show that the dangerous condition was "on the floor long enough to give . . . [defendant] constructive notice of th[e] potential 'unreasonable risk of

harm'") (quoting Restatement (Second) of Torts § 343 (1965)); Parameter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957) (stating that implied or constructive knowledge is "the existence of the condition for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent."). Plaintiff bears the burden of proving that Hilton had constructive knowledge of the black ice. Nisivoccia, 175 N.J. at 563. Here, Jensen has failed to meet that burden. Plaintiff has not provided any evidence, expert or otherwise, to show how long the black ice existed in the parking lot. By Plaintiff's own admission, he did not see the black ice when he first parked his car in the parking lot around 4:30 p.m. (Shim Aff. Ex. B, Jensen Dep. 52:1-20, 57:1-3; Shim Aff. Ex. C.) Similarly, Woods testified that he inspected the outdoor parking lot between 3:00 p.m. and 8:45 p.m. and did not notice any black ice. (Shim Aff. Ex. F, Woods Dep. 17:17-20, 33:7-22; Shim Aff. Ex. G, at 2.)

Plaintiff, however, maintains that Hilton had constructive notice because Nyariki testified that there was black ice in the parking lot at the time of the accident. (Pl.'s Opp'n Br. 10.) However, the mere "[e]xistence of an alleged dangerous condition is not constructive notice of it." Sims v. City of Newark, 244 N.J. Super. 32, 42 (App. Div. 1990). The primary inquiry is whether the defect existed "for a sufficient length of time." Tua, 64 N.J. Super. at 218; see also Saldana v. Kmart Corp., 260 F.3d 228, 235 (3d Cir. 2001) (affirming the district court's grant of summary judgment because plaintiff was unable to show how long the dangerous condition existed). As stated earlier, Plaintiff has not provided any evidence as to how long the dangerous condition existed and "the mere presence of the . . . [black ice] does not establish whether it had been there a few seconds, a few minutes, a few hours or even a few days before the accident." David, 740 F.2d at 234.

Moreover, Jensen's argument that there was frozen precipitation within the previous twenty-four hours of his alleged fall, (Pl.'s Opp'n Br. 10), does not create a material issue of fact. For one, Plaintiff makes this assertion without providing any weather reports to support it. In any event, as stated earlier, Titan plowed the snow in the parking lot and applied salt from 1:10 p.m. to 2:55 p.m. the day prior to the alleged accident. (Shim Aff. Ex. D, Mutz Dep. 33:14-19, 34:3-9.) Furthermore, on the day of the alleged incident, Titan applied salt to the outdoor parking lot from 11:54 a.m. to about 4:00 p.m. (Id. at 34:15-24, 35:1-3.) Plaintiff does not dispute that these services were performed. Neither does he provide any expert testimony to demonstrate that Titan did not perform these services properly. Plaintiff merely speculates that Titan created the dangerous condition by its "snow removal and de-icing action and in-action." (Pl.'s Opp'n Br. 12.) However, in order to defeat a motion for summary judgment, Jensen "must present more than just 'bare assertions, conclusory allegations or suspicions.'" Podobnik, 409 F.3d at 594 (quoting Celotex Corp., 477 U.S. at 325). Plaintiff has simply failed to "point to evidence that would allow the jury to infer that the" black ice was in the parking lot "for some minimum amount of time before the accident." Saladana, 260 F.3d at 228; see also Anderson, 477 U.S. at 249 (stating that an issue for trial exists only if the nonmoving party sets forth sufficient evidence for a jury to return a verdict in his/her favor).

Nevertheless, Plaintiff argues that summary judgment should not be granted because there is an issue as to whether Titan had a contract with Hilton. (Pl.'s Opp'n Br. 7.) This argument is disingenuous. Plaintiff states in his opposition brief that "[c]learly, by Titan Defendants' [sic] own actions, there was an agreement in place for Titan Defendants [sic] to perform snow removal and ice treatments to the property of Hilton Defendants." (Pl.'s Opp'n Br. to Cross Mot. 3.) Therefore, Plaintiff cannot now claim that there is an issue as to whether

9

Titan had a contract with Statewide. Moreover, Mutz, Titan's owner, testified that there was a contract between Titan and Hilton which required the former to perform snow removal and de-icing services at the time of Plaintiff's alleged accident. (Shim Aff. Ex. D, Mutz Dep. 31:11-13.) Furthermore, Titan admits in its moving papers that it performed snow removal and de-icing services on the day of the alleged incident. (Titan's Br. 1.) Therefore, there is no question that Titan was required to perform snow removal services on the date of the accident.

Also, Jensen, relying on Gunning v. Cooley, 281 U.S. 90 (1930), maintains that summary judgment should be granted because Hilton's motion is based primarily on deposition testimony and affidavits and credibility issues should be left to the jury. (Pl.'s Opp'n Br. 8.) Jensen's reliance on Gunning is misplaced. In Gunning, the Court stated that "[w]here uncertainty as to the existence of negligence arises from a conflict in testimony . . . the question is not one of law but of fact to be settled by the jury." Gunning, 281 U.S. at 94. Here, however, there is no conflict in the testimony. All of the evidence is consistent and indicates that Titan had entered into a contract with Hilton to perform snow removal and de-icing services, Titan did perform those services on the day prior to the accident and the day of the accident. Furthermore, the Court is not precluded from granting summary judgment simply because Hilton's motion is based on deposition testimony and affidavits. Pursuant to Fed. R. Civ. P. 56(c), Hilton may support its motion with depositions, affidavits or declarations. See also Saldana, 260 F.3d at 232 (stating that the "court should find for the moving party if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact") (internal quotations and citation omitted). Hence, Plaintiff's argument is meritless.

## 2. Titan's Cross Motion

Titan argues that it is entitled to summary judgment because it did not owe a duty of care to Jensen. Alternatively, Titan maintains that even if it owed a duty of care, Plaintiff cannot show that it had actual or constructive notice of the dangerous condition. On the other hand, Plaintiff asserts that the Cross Motion should not be granted because there are material issues of fact in dispute, and Titan created the dangerous condition and had notice of it.

Owing a duty of care is an essential element for a negligence cause of action. Carvalho v. Toll Bros. & Developers, 278 N.J. Super. 451, 457 (App. Div. 1995), aff'd, 143 N.J. 565 (1996). "The question of whether a duty exists is a matter of law properly decided by the court, not the jury . . . ." Wang v. Allstate Ins. Co., 125 N.J. 2, 15 (1991). According to the New Jersey Supreme Court,

> Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy. That inquiry involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.

Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993) (internal citations omitted).

Plaintiff argues that Titan owed him a duty of care because it created and/or contributed to the dangerous condition. (Pl.'s Opp'n Br. to Cross Mot. 3.) However, Plaintiff does not support this assertion with any evidence. Titan was required, pursuant to its contract with Statewide, to be "on call" for twenty-four hours a day. (Shim Aff. Ex. D, Mutz Dep. 31:11-13.) According to Mutz, the hotel's employees could call Titan if they observed any ice or snow on the grounds. (Id. at 29:12-18.) There is nothing in the record showing that the hotel employees requested that Titan plow the snow or apply ice to the ground and Titan ignored that request.

Moreover, as indicated earlier, Titan plowed the snow and applied salt in the parking lot on the day before the accident and the day of the accident. (Shim Aff. Ex. D, Mutz Dep. 33:14-19, 34:3-9, 34:15-24, 35:1-3.) Furthermore, Mutz testified that his employees usually put the plowed snow in designated areas near sewers so that the snow could melt into the sewers. (Shim Aff. Ex. D, Mutz Dep. 21:3-6.) Jensen is not disputing Titan's assertions. Additionally, he has not proffered any evidence to demonstrate that Titan's actions were insufficient. Nonetheless, Plaintiff asserts that it was foreseeable to Titan that the snow would melt and re-freeze. (Pl.'s Opp'n Br. to Cross Mot. 3.) Jensen's assertion is not accompanied with any expert report or metrological data. Plaintiff "must present more than just 'bare assertions, conclusory allegations or suspicions'" in order to survive Titan's motion for summary judgment. Podobnik, 409 F.3d at 594. Hence, Jensen has failed to demonstrate that Titan created or contributed to the dangerous condition.

Nevertheless, Plaintiff argues that this case is similar to Gonzalez v. E. Freightways, 2010 N.J. Super. Unpub. LEXIS 2338 (App. Div. Sept. 23, 2010). Plaintiff's reliance on Gonzalez is misplaced. In Gonzalez, the court held that a jury question existed as to whether the snow removal company, HDM, had been negligent in the performance of its services. Id. at *20. However, in that case, the court noted that "[i]t [wa]s not entirely clear when HMD last performed snow and ice removal services prior to plaintiff's accident." Id. at *5. Additionally, the plaintiff presented expert testimony which showed that there were "'large depressions' and 'pocket regions' which would allow accumulation of water." Id. at *7. The plaintiff's expert's report also included a photograph which "clearly show[ed] a large amount of water puddled in one of the lot's depressions." Id. Additionally, the plaintiff, using Climatological Data, proffered evidence of the temperature and weather condition around the time of the accident.

Also the expert report stated that, based on a reasonable engineering probability, "the water runoff accumulating with depression areas and acted upon by freezing temperatures, transformed the ponded water into ice (crystallization), to create an extremely hazardous walking surface condition." Id. at *7-8 (internal quotations omitted). Furthermore, the expert detailed how the snow removal company's services were insufficient. Id. at *8-10.

In this case, Jensen has not provided a shred of evidence to raise a jury question. Unlike Gonzalez, there is no expert report showing any deficiencies in Titan's work, the nature of Statewide's parking lot, or the temperature and weather conditions around the time of the alleged accident. Compared to Gonzalez, Jensen has only presented bare boned allegations. Simply put, this case is not Gonzalez.

Next, Plaintiff argues that summary judgment should not be granted because Statewide had actual or constructive knowledge of the dangerous condition. (Pl.'s Opp'n Br. to Cross Mot. 7). This argument has already been discussed. See supra pp. 7-9 of this Opinion. Furthermore, to the extent that Plaintiff is arguing that Titan had constructive knowledge of the black ice, Plaintiff has not provided any support for this assertion.

Finally, Plaintiff argues that the Cross Motion should be denied because there are credibility issues and Titan's moving papers are based on depositions and affidavits. This argument has also been discussed above. See supra pp. 9-10 of this Opinion.

## CONCLUSION

For the reasons stated above, Statewide's Motion for Summary Judgment is GRANTED and Titan's Cross Motion for Summary Judgment is also GRANTED.

**SO ORDERED.**

s/ Susan D. Wigenton<br>**Susan D. Wigenton, U.S.D.J.**

cc:  Madeline Cox Arleo, U.S.M.J.